IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZACH WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-2139-D |
| | § | |
| CHARTER COMMUNICATIONS, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Zach White ("White") asserts various state-law claims against five defendants, including, in pertinent part, National Products, Inc. ("National") and its subsidiary, RAM® Mounts ("Ram"). National and Ram together move to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the reasons that follow, the court grants the motion and dismisses this action without prejudice as to National and Ram by Rule 54(b) final judgment filed today.[1]

I

This lawsuit arises from a single-car motor vehicle accident in which White suffered significant injuries.[2] On August 28, 2022 White crashed his employer-

---

[1]The first amended complaint refers to National and Ram, collectively, as "Ram." The court sometimes does so as well in this memorandum opinion and order. *See infra* note 3.

[2]The court recounts the background facts favorably to White as the nonmovant. "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case[] . . . the court must accept as true the

issued Ford F-450 pickup truck. His truck was equipped with a laptop stand that was designed and manufactured by Ram. White struck his head on the Ram laptop stand and suffered serious bodily injuries.

White filed this suit in Texas state court. In pertinent part, White asserts state-law products liability claims against National and Ram. One of the defendants—Ford Motor Company ("Ford")—with the consent of two other defendants whose joinder was not challenged as improper—removed the case to this court based on diversity of citizenship. National and Ram now move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. The court is deciding the motion on the briefs, without an evidentiary hearing or oral argument.

II

A

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over National and Ram would be consistent with the

---

nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

B

A defendant's contacts with the forum state may support either general or specific jurisdiction over the defendant. *See Mink*, 190 F.3d at 336. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). "The paradigm forums in which a corporate defendant is at home[] . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (internal quotation marks omitted).

But the "exercise of general jurisdiction is not limited to these forums; in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (internal quotation marks omitted). An exemplary case is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, (1952), in which "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio[,]" whereupon "Ohio became the center of the corporation's wartime activities." *Id.* (internal quotation marks omitted).

"By comparison, specific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's causes of action." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024).

> This circuit applies a three-step test for determining specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable.

*Id.* (citations and internal quotation marks omitted).

C

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). In addition to the

complaint, "the district court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (internal quotation marks omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnote omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

III

The court concludes that White has not made a *prima facie* showing that the court has personal jurisdiction over National and Ram.[3]

---

[3] The first amended complaint treats National and Ram, parent and subsidiary, as a single entity. Because the court lacks personal jurisdiction over National and Ram regardless of their organizational structure, it likewise analyzes National and Ram, collectively, as Ram.

A

The court first determines whether White has made a *prima facie* showing of general jurisdiction.

Ram is a Washington corporation headquartered in Washington. This is not "an exceptional case" in which Ram's operations in Texas—designing, manufacturing, and selling a product that it knows will reach the Texas market—are "so substantial and of such a nature as to render [them] at home in [the state of Texas]." *BNSF Ry.*, 581 U.S. at 413 (internal quotation marks omitted); *see, e.g.*, *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242-43 (5th Cir. 2022) (en banc) (internal quotation marks omitted) (concluding that Japanese company's United States contacts, which were substantial "in absolute terms" and generated "about $1.47 billion in consolidated revenue every year[,]" were not "so substantial and of such a nature as to render the corporation at home in the [state of Texas]"); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987) ("In short, that Beech products flow into Texas does not create a general presence in that state. Each transaction was completed outside of Texas. The laws of Texas neither protected nor benefited Beech."); *compare Perkins*, 342 U.S. at 448 (holding that Ohio could exercise general jurisdiction over Philippine mining company that moved its operations to Ohio) *with Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding that Texas lacked general jurisdiction over Colombian corporation that sent CEO to Texas for contract-negotiation session; accepted checks drawn on Texas bank; purchased helicopters, equipment, and training services from Texas-based company; and sent personnel to

Texas-based company's facilities in Texas for training). Accordingly, Ram is "at home" in Washington, not Texas. *See BNSF Ry.*, 581 U.S. at 413.

B

The court considers next whether White has made a *prima facie* showing of specific jurisdiction.

White contends that Ram purposefully "availed itself of the privileges of conducting activities in Texas[,]" P. Resp. (ECF No. 15) at 2, ¶ 10, by: marketing its products through its website to commercial entities that do a significant amount of business in Texas, such as White's employer; placing the laptop mount that injured White into the stream of commerce; and partnering with a Texas company named Can-Am Wireless.

> In the context of products-liability cases, like the case presently before us, an analysis involving a stream-of-commerce metaphor is often employed to assess whether the non-resident defendant has minimum contacts with the forum (our factor 1). As the Supreme Court has explained, courts use the metaphor to allow for jurisdiction where the product has traveled through an extensive chain of distribution before reaching the ultimate consumer. The stream-of-commerce doctrine recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum.
>
> The Fifth Circuit has found this doctrine and thus minimum contacts satisfied so long as the court determines that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. In other words, mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce. But,

>           the defendant's contacts with the forum state must be more than
>           random, fortuitous, or attenuated, or the result of the unilateral
>           activity of another party or third person.

*Zoch v. Magna Seating (Germany) GmbH*, 810 Fed. Appx. 285, 289-90 (5th Cir. 2020) (cleaned up).

Although White has shown that Ram delivered its laptop mount into the stream of commerce with the expectation that it would be purchased or used by consumers in Texas, he has not made the requisite showing that Ram's laptop mount "made its way into [Texas] while still in the stream of commerce." *Id.* Ram's website lists a Texas company, Can-Am Wireless, as a "partner[]" and "factory certified Ram® vehicle mount installer[.]" P. Resp. (ECF No. 15) at 6. Ram therefore foresaw or was aware that its products, such as the laptop mount that injured White, would be purchased or used by Texas consumers, who might need to visit Can-Am Wireless's Cedar Park, Texas store for certified installation services. *Compare Zoch*, 810 Fed. Appx. at 291-92 (emphasis omitted) (concluding that car seat manufacturer that knew that its seats "would be placed in vehicles ultimately destined for the United States generally" could not have "reasonably expected that its product would be sold or used in Texas" where plaintiff did not provide "any evidence that [the manufacturer] was aware that any of its seats . . . would likely end up in Texas") *with Sherri Hill, Inc. v. Amarra USA LLC*, 2020 WL 10056075, at *6 (W.D. Tex. Dec. 2, 2020) (citation omitted) ("Amarra's website directs its customers to the physical addresses of these Texas retailers. This evidence makes it apparent that Amarra was aware that its products, including the Subject Works, were sent to Texas retailers to be purchased by Texas residents, and that Amarra intentionally

placed its products directly into the stream of commerce."), *rec. adopted*, 2020 WL 10056150 (W.D. Tex. Dec. 29, 2020).

Even so, White has failed to make a *prima facie* showing that Ram's laptop mount made its way into Texas while still in the stream of commerce. White alleges that Ram's laptop mount was installed in his employer-issued Ford F-450 pickup truck and that his employer does a significant amount of business in Texas. But it is unclear from these facts how the laptop mount made its way into Texas. On the one hand, White's employer could have purchased the laptop mount, or the pickup truck with the mount pre-installed, in Texas, meaning that the mount likely entered Texas in the stream of commerce. On the other hand, however, White's employer is a company comprised of various business entities, none of which is incorporated or headquartered in Texas. White's employer therefore might have received the laptop mount outside of Texas before issuing to White in Texas the pickup truck that contained the mount, in which case the mount likely did not enter Texas in the stream of commerce. *See, e.g.*, *Eddy v. Printers House (P) Ltd.*, 627 Fed. Appx. 323, 327 (5th Cir. 2015) (per curiam) (concluding that printing press did not enter Texas in stream of commerce because once it "was installed in Mississippi, it exited the stream of commerce because the Mississippi buyer was a consumer of the product, not a distributor or retailer").

Because the court is unable to determine from White's *prima facie* showing how the Ram laptop mount ended up in Texas to begin with—let alone that it entered in the stream of commerce—Ram's "mere foreseeability or awareness" that its laptop mount would be purchased or used by consumers in Texas "is [not] a constitutionally sufficient basis for

- 9 -

personal jurisdiction." *Zoch*, 810 Fed. Appx. at 289-90; *see, e.g.*, *Eddy*, 627 Fed. Appx. at 327 (alterations in original) ("The fact that the original buyer of the press sold it to another entity, which then sold it to another entity, clearly establishes that the press found its way into Texas not through any intentional act taken by TPH but through 'the unilateral activity of . . . third [parties].'"). Consequently, the court holds that Ram lacks minimum contacts with Texas, and the court cannot exercise specific personal jurisdiction over National and Ram. *See Shambaugh & Son*, 91 F.4th at 372 ("This circuit applies a three-step test for determining specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there[.]").

\* \* \*

For the reasons explained, the court grants the Rule 12(b)(2) motion of National and Ram and dismisses White's actions against them without prejudice by Rule 54(b) final judgment filed today.

**SO ORDERED**.

October 24, 2024.

                                              SIDNEY A. FITZWATER
                                              SENIOR JUDGE